Henderson, Judge.
We are satisfied with the decision of the Court, in the Bank of Newborn against Pugh; we therefore decline entering into an examination of the question, whether the Court mistook its duty in refusing a new' trial. It is a mistake to suppose that this Court, since the repeal of the act declaring tiiat it possessed appellate powers upon questions of fact, ever has awarded .a new trial, because-the Judge below refused one. The new trials which have been awarded here, were in cases where there was some error, which infected the verdict; such as the admission or rejection of evidence, which ought to have been received or rejected, or some misdirection of the Judge to the Jury, on questions of law7, arising on the trial, or the like. Since the statute of Westminster the 2, (31 Ed. l) such matters may be assigned for error, and provision is made by the statute for getting them on the record, when brought into the Court of Errors. Our statements accompanying tiie re *122 cords sent here, are nothing but a practical construction put upon that statute, and owe their origin to our act of 1799, relative to the mode of bringing points of law aris-jng on tj)e cjrcuit before the meeting of the Judges, directed by that act. This mode was still practised in cases of appeal afterwards allowed, and was continued after tiie organization of the present Court; these statements, we consider as containing the proceedings excepted to in the Court below, by the party against whom they operated. The judgment on the verdict obtained improperly, that is through the error of the Judge, is here reversed, and the cause remanded, with directions to issue a venire facias de novo. The new trial is therefore, in consequence of the relief authorised by tiio statute.' We may have inadvertently interfered in cases where we ought not; I think, in all probability, we did in the case of Cherry v. Slade. We have not the power of examining those parts of the charge operating in favor of the Defendants, for they are not excepted to.
But it is said, that we ought to grant a new trial, because the Plaintiif, by remitting what is called “the excess of interest,” has admitted that the contract was usurious. This affords ground for a judgment for the Defendant, if it affords foundation for any act of this Court, for it is an admission of record, that the contract was usurious; why then send it to a Jury to try that fact ? But there is no admission of such fact. It is quite probable that it was admitted as usurious interest, under the charge of the Judge; but the Court acts upon facts, not upon probabilities, and this admission is nothing but evidence of a fact; it is possible the Plaintiff may have remitted from other causes. He might for some reasons, unknown to us, wish to retain his verdict. He may have feared that he would not be able to obtain so large a one at another, time; he may have feared that delay would produce the loss of the debt, through insolvency; or he may have had an immediate demand for the *123 suénej. These, it is true, are very improbable conjectures, but they may be correct; and if they may be so, it proves that it is not an inference of law, but of fact. In addition to this, it would not be sufficient for the Plaintiff to acknowledge simply, that he was guilty of usury in the contract, but he must confess how, that the Court may see that the statute has been violated; for peradventure lie might mistake what usury is within that statute.— This is therefore neither cause for a new trial, nor for a judgment for the Defendant. But if the Plaintiffs distinctly admit upon the recomí, any fact which shows they are not entitled to recover, the Court would be as much bound to notice.it as if found by the Jury, for the admissions of the parties upon the record, are the highest evidence of the facts.
If there is any error examinable by this Court, it arises from those parts of the charge which were in favor of the Plaintiffs, for these are understood as excepted to by the Defendant. These are, that taking interest in advance on this bond, was not usurious; and that taking interest for ninety-two days on this bond, it being given for renewal, is not usurious, for so I must understand this charge, notwithstanding the qualification that if the Defendants had the use of the Plaintiffs money, they ought to pay interest on it.
That the statute of usury is violated by taking the interest in advance, on the whole sum lent, is almost too evident to require argument. If the sum, say one hundred dollars, agreed to be loaned for one year, at six per cent, per annum, is counted down, and the lender immediately withdraws six dollars, by way of discount or interest, the sum actually forborne, which is the matrix of interest, is only ninety-four dollars, which at that rate of interest, together with itself, produces at the end of the year, ninety-nine dollars and sixty-six cents — less, by thirty-four cents, than the sum to be paid at the end of the year. As therefore, taking the interest in advance, *124 gives an interest of six dollars for one year, on ninety-four dollars, the statute is violated, for it plainly directs that six pounds only, (i. e. six dollars) shall be taken on j-]ie hundi'cd for forbearance, for one year, and in the same proportion, for a greater or less sum, and for a longer or shorter time. The rule extended, completely shows, its impropriety, by producing a result perfectly absurd. A note for one hundred dollars, payable sixteen years and eight months after date, is offered for discount on the day of its date; if the interest on the whole sum is taken in advance, it absorbs the whole amount of the note, the person who discounts it pays not a cent for it, of course, the person who offers it gets nothing. The rule of a discount, and such no doubt, the Legislature intended to be permitted, by the statute of usury, (whatever they may have meant when they incorporated the State Bank,) was that such a sum, should be advanced upon a discount as would, together with its interest, amount to the sum to be paid at the maturity of the note. I speak not of the purchase of a note or bill in market, for that may be made at any price, taking care that it is not a device to cloak a loan ; if it is a fair parchase, the statute has nothing to do with it. Y/e can derive nothing from what was said hy the Supreme Court of the U. S. that an authority to make discounts, gives an authority to take interest in advance. True — but is the discount to be equal to the interest on tiie whole sum lent, or only equal to the interest on the balance, after taking out tbe discount, the words in the statute being, that more than six pounds on the hundred, shall not be taken by way of “ discount or interest.” And I take it to be very clear indeed, so much so, that not a shadow of doubt is left on my mind, that the authority to make discounts, gives the power to make them in such a way only, as to leave as much outstanding as will, with its interest, amount to the sum to be paid at the maturity of the bill, note or bond, for a bond being assignable by our law, it is as *125 much the subject of discount as a note. Were this case therefore, to be decided by the application of our statute „ * , , , against usury, to its tacts, unaffected by other considerations, I could not hesitate to declare the bond usurious, and therefore void.
But an exposition, legislative, judicial and popular, has been given to this statute and to usury laws, similar to it, which I am bound to respect. When the charter of this Bank was granted, there had been in operation for some years, two Banks chartered by the State, whose operations were extensive, and whose practice of taking interest in advance, on the whole sum loaned, must have been known to the Legislature : The old Bank of the United States had been in operation for twenty years, which discounted in tlie same manner : Banks in adjoining states, and others,, with which we had great intercourse, were also in operation, governing themselves by the same rules. With this information before them, this charter was worded in substance, in the same manlier as to the point we are now considering, and I believe in the same words, as that of the Bank of the United States. The "State was a stockholder in each of our local Banks, and many shares were retained for the State in this Bank. These are strong legislative expositions.
In the Courts in Nevv-York, Pennsylvania, Massachusetts and Connecticut, this practice has been declared not within their statutes of usury, which are similar to our own, and it has been sanctioned by the supreme judicial tribunal of the Union, and in England, even in the case of private bankers $ but I shall be told, it has been sanctioned only in case of negotiable bills and notes, and not in the case of bonds. The principle has been applied there to negotiable securities, and bonds there not being negotiable, could not be discounted: — they there applied the remedy as far as the evil extended. The same principle *126 will extend here to bonds. The papular exposition is equal- ^ univc‘rsa1’ for during the thirty years that our Banks have been in operation, although many millions have been jenton f[)e sarae terms, this is the first instance of insistence which Í have heard of, made, on these grounds, to a recovery. And were I at liberty to hazard a conjecture as to the cause of this contest, I would say that it arose from the oppressive practice of this branch of the Bank, in claiming interest on two bonds, running at the same time, that is charging interest on the old bond and on the newly discounted bond, until the proceeds of the latter, were applied to the discharge of the former. B.ut I am free to declare, that in a case where the change of construction would produce those evils only which ordinarily arise from change of decision, Í should feel all that has been done, insufficient to control the plain words of the statute. But when I look to the incalculable injury which must arise from giving a different exposition^ injury, the extent of which no man can foresee, the whole of our circulating medium in the hands of individuals, and in our treasury, annihilated and rendered worthless, at a single blow — I must confess I am appalled at the consequences, and must abstain from acting — convinced that the obligation which I am under to the State, of asserting the supremacy of the law, does not require it at the expense of the peace and prosperity of individuals, and the best interests of the State.
I am inclined to think, that taking interest for ninety-two days, on the note for eighty-eight days, is not usurious. It is clearly not so for charging interest for the days of grace, although they are not demandable on a bond ; for if the contract was made with an understanding that they were to be allowed, the making of a writing, whereby they were excluded, would not be usurious ; for it is the usurious contract which vitiates the security. There cannot be any usurious security, if the contract is not usurious. II an authority is wanting to prove a pc- *127 sition so pláin as this, it will be found in Nevison v. Whitley, (Cro. Car. 501—Ord. on usury, 59.) Computing interest for the day on which the new note was taken, if interest for the same day, had been taken on tiie old bond, would be usurious, if it was the same, or one continued loan. But I think that it is not, and the most satisfactory evidence of this, is afforded from the fact, that it was at the option of the Bank to continue it or not. It is true, that on notes of accommodation, it is understood that it is quite probable, that the time will be extended upon a compliance with the rules of the Bank; but at the same time, it is also well understood, that the Bank may, at its option, enforce payment, which must exclude all idea that the borrower, by the terms of the contract, has a further time for, payment. I think that it was usury of the most oppressive kind, to take interest on the new note, before its proceeds were applied to the discharge of the old note ; for until that time, the Bank advanced nothing, and it is- no excuse to say, that it was Hunter’s fault, for he should have paid the difference and drawn a check in favor of his old note. These were the terms iinposed by the Bank on the new loan, and until they'were complied with, nothing was advanced, it was a bare agreement to lend upon . the performance of the terms by Hunter. It is a fallacy to say that the money was to Hunter’s credit, and subject to his check,* — it would only stand to his credit upon his paying the difference, when he could check for it, and then he could only check in favor of his old note. Nothing therefore was lent by the Bank, until the proceeds were applied, and until that time, no interest should have been charged; but this Court cannot get at that question, if it could, the judgment would be reversed; for I believe that this mode of doing business is confined to the Tarborough Branch of this Bank. It has not either a legislative, judicial os* popular sanction.
*128 The universality and the notoriety of the practice of taking interest in advance, by the Banks, and their connection with the government, would seem almost to ex-c]u(|e the idea of criminality; usury, by our law, is deemed to be a crime, for which, forfeitures are inflicted on the offender, as loss of the debt, and double the amount loaned or forborne, together with a liability to an indictment. In offences of this kind, if the actor is guilty, every person who is concerned in the transaction is guilty also. The directory, as having ordered the usury, which may well be inferred from their subsequent sanction, and even the stockholders if they knew of it, by receiving the dividends, incurred the forfeitures ; in this latter case, the State would be implicated, it being a stockholder to a large amount. This must exclude all idea of actual criminality, I say actual criminality, for in reality, there cannot be a crime without an actual intent to violate the law. Crime presupposes a knowledge of the law ,• and ignorance of law is no defence, not because a knowledge of the law, is not essential to crime, but because ignorance is not permitted to be averred and proven, it being a presumption of law, that every man (however false in point of fact,) knows the public laws. These presumptions of law are nothing else but certain conclusions of fact, which the law draws from motives of policy and convenience ; as where the probability of a fact is so very strong, that there is scarcely a possibility of its being otherwise, policy, and perhaps justice also, require that it should not be controverted; for in the first, place, it is so often the fact, that it had better in all ca-„ ses be so considered, rather than undergo an investigation in each case ; and secondly, even if an investigation, in each case was permitted, so imperfect are all human means of arriving at truth, that there is more reliance to be placed on the general conclusion, than on the result of a particular investigation. Thus, if a stroke is given with a bar of iron, it is a presumption of law that *129 he who gave it’ intended to kill, and therefore, when death ensues, .the actual intent is not the subject of en-' , , , . quiry, although a murder cannot be committed without an actual intent to kill; here the law presumes the actual intent. So in England, leaving tiie goods in the possession of the vendor, is perse a fraud, that is, a presumption of law that the transaction is fraudulent; it is not so in this state. It is said that the common custom and usage of that country require that this presumption should be made, here we think, they do not. There has been an extraordinary change in the presumption .of law, in the case of murder j originally, murder could only be committed in secret, for it being of its essence that it should he committed with deliberation, that is witii malice aforethought, he who killed another openly and publicly, was not believed to have done it with malice afore.thought. The punishment being death, it was inferred that he was moved to the act by passion, not by judgment or reason, the presumption of law therefore, was, that he did not commit the act with malice aforethought. But experience proving that this presumption was in fact unfounded, and that wicked men would, even in public, commit homicide with malice prepense, this rule of presumption was therefore abolished.
I am almost induced to believe that upon the principle that a mistake in point of fact, exempts a person from the penalties of usury, the Plaintiffs are exempted in this case ; for I think it cannot well be believed, that they knew that they were violating the law, and ignorance of law, could it be believed, forms as good an excuse as ignorance of fact — they are based on the same principles, the only difference being, that in ordinary cases, the one is not to be Believed, but the other is.— Upon tiie whole, I am of opinion that the judgment should be affirmed.